UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
: 
EM LTD. and NML CAPITAL, LTD., :
: 06 Civ. 7792 (TPG)
Plaintiffs, :
:
- against - :
:
BANCO CENTRAL DE LA REPÚBLICA ARGENTINA :
and THE REPUBLIC OF ARGENTINA, :
:
Defendants. :
:
------------------------------------------------------------------- X

# REPLY MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN FURTHER SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:

   Jonathan I. Blackman
   Carmine D. Boccuzzi

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. PLAINTIFFS HAVE FAILED TO ESTABLISH SUBJECT MATTER JURISDICTION OVER THIS DECLARATORY JUDGMENT ACTION | 2 |
|     A. The Republic Has Not Waived Immunity For This Alter Ego Action, And Therefore No Waiver May Be Imputed To BCRA | 2 |
|     B. Plaintiffs' Claims Are Not Based Upon The Republic's Or BCRA's Commercial Activity In The United States | 4 |
| II. PLAINTIFFS FAIL TO PLEAD AN ALTER EGO CLAIM AGAINST BCRA | 6 |
|     A. Plaintiffs' Factual Allegations Are Insufficient To Establish Day-To-Day Domination And Control | 6 |
|     B. Plaintiffs Have Failed To Plead "Fraud Or Injustice" | 9 |
|     C. Plaintiffs Are Not Entitled To Discovery | 10 |
| CONCLUSION | 11 |

## TABLE OF AUTHORITIES

**Cases**  Page(s)

*Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*,
183 F.3d 1277 (11th Cir. 1999) .................................................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................... 7-8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................... 8

*de Sanchez v. Banco Central de Nicaragua*,
770 F.2d 1385 (5th Cir. 1985) ...................................................................................... 5

*EM Ltd. v. Republic of Argentina*,
473 F.3d 463 (2d Cir. 2007) .......................................................................................... 4-5

*EM Ltd. v. Republic of Argentina*,
720 F. Supp. 2d 273 (S.D.N.Y. 2010), *vacated sub nom.*, *NML Capital, Ltd. v. Banco Central De La República Argentina*, 652 F.3d 172 (2d Cir. 2011) ..................................... 7

*EM Ltd. v. Republic of Argentina*,
No. 08 Civ. 7974, 2010 WL 3910604 (S.D.N.Y. Sept. 30, 2010) ..................................... 1

*First City, Tex.-Hous., N.A. v. Rafidain Bank*,
150 F.3d 172 (2d Cir. 1998) .......................................................................................... 11

*HBE Leasing Corp. v. Frank*,
48 F.3d 623 (2d Cir. 1995) ............................................................................................ 10

*In re 650 Fifth Avenue & Related Properties*,
881 F. Supp. 2d 533 (S.D.N.Y. 2012) ............................................................................ 6-7

*In re Terrorist Attacks on Sept. 11, 2001*,
538 F.3d 71 (2d Cir. 2008) ............................................................................................ 11

*Kensington Int'l Ltd. v. Itoua*,
505 F.3d 147 (2d Cir. 2007) .......................................................................................... 5, 6

*LNC Invs., Inc. v. Republic of Nicaragua*,
115 F. Supp. 2d 358 (S.D.N.Y. 2000), *aff'd sub nom.*, *LNC Invs., Inc. v. Banco Central de Nicaragua*, 228 F.2d 423 (2d Cir. 2000) ..................................................................... 5

*Mateo v. Perez*,
No. 98 Civ. 7426, 1999 WL 216651 (S.D.N.Y. Apr. 13, 1999) ........................................ 4

 **Page(s)**

*NML Capital, Ltd. v. Banco Central De La República Argentina*,
652 F.3d 172 (2d Cir. 2011), *cert. denied sub. nom*, *EM Ltd. v. Republic of Argentina*,
133 S. Ct. 23 (2012) .................................................................................................. 1, 2, 10

*Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*,
235 F.3d 738 (2d Cir. 2000) ...................................................................................... 5

*Republic of Argentina v. Weltover*,
504 U.S. 607 (1992) .................................................................................................. 5

*Saudi Arabia v. Nelson*,
507 U.S. 349 (1993) .................................................................................................. 5

*Seijas v. Republic of Argentina*,
No. 10 Civ. 4300, 2011 WL 1137942 (S.D.N.Y. Mar. 28, 2011),
*aff'd*, No. 11-1714-cv, 2012 WL 5259030 (2d Cir. Oct. 25, 2012) .......................... 8-9

*Seijas v. Republic of Argentina*,
No. 11-1714-cv, 2012 WL 5259030 (2d Cir. Oct. 25, 2012) .................................... 9, 11

*TMR Energy Ltd. v. State Property Fund of Ukraine*,
411 F.3d 296 (D.C. Cir. 2005) .................................................................................. 6-7

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002) .................................................................................... 2

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ...................................................................................... 4

The Republic[1] submits this reply memorandum of law in further support of its motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

In this Court's September 30, 2010, opinion in plaintiffs' separate alter ego action against BNA, the Court observed that because "plaintiffs now are not seeking to recover" on particular assets in light of the Court's vacatur of orders of attachment and restraint, "there is a most serious question about whether the [alter ego] allegations provide a sufficient jurisdictional basis." *EM Ltd. v. Republic of Argentina*, No. 08 Civ. 7974, 2010 WL 3910604, at *4 (S.D.N.Y. Sept. 30, 2010). That same serious question is presented here, and plaintiffs' opposition confirms what is clear from their Complaint – no exception to Section 1605 of the FSIA provides subject matter jurisdiction over plaintiffs' declaratory judgment action, and the Complaint must therefore be dismissed.

As an initial matter, the FSIA's waiver exception is inapplicable, as the Second Circuit has already concluded that the Republic's waiver of immunity cannot be imputed to BCRA. *NML Capital, Ltd. v. Banco Central De La República Argentina*, 652 F.3d 172, 195-96 (2d Cir. 2011) ("*NML*"), *cert. denied sub. nom*, *EM Ltd. v. Republic of Argentina*, 133 S. Ct. 23 (2012). In any event, even if one accepts plaintiffs' erroneous "waiver imputation" argument, the language of the waiver does not provide a jurisdictional basis for this suit. Nor does the FSIA's commercial activities exception, given that this action does not purport to be based on

---

[1] Capitalized terms have the meaning assigned in the Republic's opening brief, dated November 27, 2012 ("Rep. Br."). Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated January 30, 2013, is referred to as "Pl. Opp." The Republic joins in and incorporates the arguments made by BCRA in its Reply Memorandum of Law, dated March 18, 2013 ("BCRA Rep."). Unless otherwise indicated, all exhibits are attached to the Declaration of Carmine D. Boccuzzi in Support of the Republic's Motion to Dismiss, dated November 27, 2012.

commercial activity of the Republic or BCRA in the United States (or for that matter, commercial activity elsewhere having any direct effect here).

Finally, plaintiffs fail to adequately plead their alter ego claim. As explained by the Republic and BCRA in their opening briefs, plaintiffs improperly rely on unsupported characterizations and speculation about the relationship between BCRA and the Republic, and allege facts that typify the relationship between governments and their instrumentalities. No case has held that the presumption of separateness afforded to government instrumentalities can be overcome by such allegations. To the contrary, this Court and the Second Circuit have held that they fail as a matter of law. The Court should do so again here, and dismiss plaintiffs' Complaint.

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO ESTABLISH SUBJECT MATTER JURISDICTION OVER THIS DECLARATORY JUDGMENT ACTION

#### A. The Republic Has Not Waived Immunity For This Alter Ego Action, And Therefore No Waiver May Be Imputed To BCRA

Plaintiffs contend that the Republic's waiver provides subject matter jurisdiction over this declaratory judgment action because BCRA is the Republic's alter ego. TAC ¶¶ 11,12; Pl. Opp. at 24. This argument fails for at least three reasons.

*First*, the Second Circuit has already held that the Republic's waiver does not apply to BCRA – regardless of whether BCRA is determined to be the Republic's alter ego – because the Republic's waiver does not by its terms extend to any agency or instrumentality, let alone to BCRA expressly. *NML*, 652 F.3d at 195-96 (waivers apply to those "specifically embraced"); *see also* BCRA Brief at 12-13; BCRA Rep. at 9-11. That decision is the law of the case, and ends any attempt by plaintiffs to impute the Republic's waiver to BCRA. *See United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

*Second*, and in any event, the FAA waiver on its face does not apply to this action. Plaintiffs have not brought suit "'solely for the purpose of enforcing or executing any Related Judgment,'" Pl. Opp. at 25 (quoting FAA at A-18 (Ex. P)), as they are not trying to collect on a judgment by attaching or executing on assets of BCRA. Rather, plaintiffs seek a judgment declaring BCRA's *liability*. *See, e.g.*, TAC ¶¶ 1, 5, 126, 133, 136; Pl. Opp. at 25, 26, 32. Plaintiffs acknowledge that FSIA Section 1605 is the relevant jurisdictional provision here, not the judgment enforcement provisions of Section 1610 and 1611 of that statute. Pl. Opp. at 24-25; TAC ¶¶ 11-12; *see also* Pl. Opp. at 26-27 (tellingly trying to distinguish this action from the *judgment enforcement* dispute addressed in the Second Circuit's decision in *NML*); *id.* at 33 (same).

Nor does the Republic's waiver of immunity from suit "'with respect to the Securities of this Series or the Fiscal Agency Agreement'" apply to plaintiffs' action. Pl. Opp. at 25 (quoting FAA at A-17) (Ex. P)). While plaintiffs contend that this provision is applicable because they seek to hold BCRA liable for the Republic's debts under the FAA, *see id.*, their *motivation* for bringing suit does not, and cannot, change the fact that plaintiffs have not sued (and could not sue) BCRA for breaching an obligation under the FAA. Moreover, the conduct upon which plaintiffs' alter-ego claim is based is unrelated to the FAA bonds, let alone to the Republic's default on those bonds. The sweeping declaratory relief plaintiffs seek therefore is not an action "with respect to" the Republic's FAA bonds, and the FSIA does not provide jurisdiction based on the Republic's waiver of immunity. *See* Rep. Br. at 6 (citing *NML*, 652 F.3d at 197; *EM Ltd.*, 2010 WL 3910604, at *4).

*Third*, and finally, even were one to accept plaintiffs' incorrect waiver imputation argument, it fails because they have not pled sufficient facts to establish that BCRA is the

3

Republic's alter ego, a separate ground for dismissal under Federal Rule of Civil Procedure 12(b)(6).  *See infra*, Point II; BCRA Brief at 13-17.

### B. Plaintiffs' Claims Are Not Based Upon The Republic's Or BCRA's Commercial Activity In The United States

Plaintiffs further argue that the FSIA provides subject matter jurisdiction over this action because it is "based upon" the Republic's and BCRA's commercial activity in the United States.  This argument is also meritless.  While plaintiffs argue in their opposition that the purported United States commercial activities on which they rely are BCRA's "spot transactions at the FRBNY" and general acquisition of dollars "in the United States," *see* Pl. Opp. at 32, plaintiffs may not save their Complaint through arguments about new "facts" in opposition to a motion to dismiss, *see Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *see also Mateo v. Perez*, No. 98 Civ. 7426, 1999 WL 216651, at *3-4 (S.D.N.Y. Apr. 13, 1999) (distinguishing motions to dismiss for lack of subject matter jurisdiction based on legal sufficiency, in which court accepts factual allegations in complaint as true, with those raising factual disputes, in which court may consider additional evidence).[2]

Moreover, plaintiffs are wrong to argue that BCRA's acquisition of dollar reserves is a "commercial activity" based on this Court's now-reversed decision, Pl. Opp. at 32; *see* Rep. Br. at 19, which concerned particular funds on deposit at the FRBNY.  Plaintiffs themselves describe these acquisitions as made to effect government monetary policy and in an effort to control the exchange rate of the Argentine Peso, *see id.* (citing TAC ¶¶ 97-106), a uniquely sovereign activity, *see EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 482-83 (2d Cir. 2007) (looking to sovereign nature of borrowing funds from IMF "to preserve stability in the international

---

[2] The exception is plaintiffs' allegation that BCRA acts as the Republic's "fiscal agent," but as noted in the Republic's opening brief, plaintiffs fail to allege what actions, if any, BCRA has undertaken in the United States as the Republic's "fiscal agent," how a "fiscal agent" equates to an alter ego of the Republic, and why such activity is the basis of plaintiffs' alter ego claim.  Rep. Br. at 7.

monetary system and foster orderly economic growth" in holding no commercial activity); *see also Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992) (government's regulation of foreign currency exchange is a classic example of sovereign activity); *de Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385, 1393 (5th Cir. 1985) (central bank's sale of foreign currency is "one aspect of a government's sovereign function of regulating the monetary system," and thus not a commercial activity).

Finally, plaintiffs fail to explain how these newly raised and purportedly commercial activities form the "gravamen" of their Complaint. *See* Rep. Br. at 7; *see also Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 235 F.3d 738, 747 (2d Cir. 2000) ("based upon" requires "a significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action" (internal quotation marks omitted)). Plaintiffs' alter ego claim is not based on – either as a matter of law or logic – BCRA's banking activities in the United States. *Cf.* TAC ¶ 32 (summarizing ¶¶ 33-113); *see also Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 155-57 (2d Cir. 2007); *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993) (action not based upon activity in the United States because this activity, considered alone, would entitle plaintiff to nothing). Rather, plaintiffs contend (incorrectly) that the "Republic completely controls BCRA under *Bancec*," *see, e.g.*, Pl. Opp. at 45,[3] but that alleged control occurs as per the Complaint exclusively in *Argentina*. *See* TAC ¶ 32; Rep. Br. at 7.

---

[3] Extensive control over another's daily operations along with an abuse of the corporate form are the elements necessary to satisfy an alter ego claim under the first prong of *Bancec*. *LNC Invs., Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000), *aff'd sub nom.*, *LNC Invs., Inc. v. Banco Central de Nicaragua*, 228 F.2d 423 (2d Cir. 2000). Thus, plaintiffs' citation to case law from other circuits for the proposition that the commercial activity must establish only one element of a claim, *see* Pl. Opp. at 31 (citing *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 682 (8th Cir. 2002), *Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000)), is not only contradictory to controlling Second Circuit precedent, *see Kensington*, 505 F.3d at 155-57, but also irrelevant here.

Plaintiffs also contend for the first time in a footnote in their opposition that they have pled sufficient facts for jurisdiction because their action is based "'upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.'" Pl. Opp. at 31 n.12 (quoting 28 U.S.C. § 1605(a)(2)). However, plaintiffs fail to explain to what commercial activity they refer; to what act they refer; and how this act causes a "direct effect" in the United States. *See Kensington*, 505 F.3d at 158 (no "direct effect" in the United States as a result of foreign entity's injury from non-payment of judgment). Plaintiffs' passing reference to an alternate basis for jurisdiction that they do not even allege in their Complaint must therefore be rejected. *See* BCRA Rep. at 15 n.19.

## II.   PLAINTIFFS FAIL TO PLEAD AN ALTER EGO CLAIM AGAINST BCRA

### A. Plaintiffs' Factual Allegations Are Insufficient To Establish Day-To-Day Domination And Control

Plaintiffs acknowledge in their opposition that in order to meet *Bancec's* first prong, they must plead facts sufficient to show that BCRA "'is so extensively controlled by [the Republic] that a relationship of principal and agent is created.'" Pl. Opp. at 39 (quoting *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 629 (1983)). As the Republic established in its opening brief, the great weight of authority interpreting this standard has required that a plaintiff seeking to overcome the strong presumption of separateness afforded by *Bancec* plead and prove that a parent state exercises day-to-day control over the agency or instrumentality. *See* Rep. Br. at 9-10.[4]   Plaintiffs do not seriously contend that the Republic

---

[4] Plaintiffs cite only two decisions that purportedly have found an alter ego relationship under *Bancec's* first prong without day-to-day control, but misconstrue both. *See* Pl. Opp. at 40. In *In re 650 Fifth Avenue & Related Properties*, 881 F. Supp. 2d 533 (S.D.N.Y. 2012), the court simply rephrased the day-to-day control requirement in holding that the alter ego test was met as a result of defendant's "[in]ability

exerts such day-to-day control over BCRA, and implicitly acknowledge the contrary. *See* Pl. Opp. at 40-42. This Court expressly reached the same conclusion in *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 299 (S.D.N.Y. 2010), *vacated sub nom.*, *NML*, 652 F.3d 172, and nothing alleged in the Complaint calls into question that determination. *See* Rep. Br. at 9-19.

Plaintiffs nonetheless assert that their allegations overcome the presumption of separateness, Pl. Opp. at 39-40, but this argument fails. As an initial matter, plaintiffs focus much of their Complaint and opposition on criticizing BCRA's monetary policy, including on the ground that such policy is not sufficiently anti-inflationary. *See* TAC ¶¶ 93-94, 97-108; Pl. Opp. at 8, 19-22, 49-50. However, plaintiffs' disagreement over whether BCRA's economic policies are sufficiently anti-inflationary is not the legal standard for alter ego.

Further, the majority of plaintiffs' allegations are not factual, but rather offer plaintiffs' conclusory assertions and characterizations, or those of opposition newspapers and politicians in Argentina. *See, e.g.*, Rep. Br. at 11, 15 n.6. For example, plaintiffs restate in their opposition the assertion that "[i]t is widely understood" that the loans made to the Republic by BCRA will "never [be] paid back," Pl. Opp. at 44, and note a "rumor" that the Republic missed a single payment in 2006, TAC ¶ 44. However, these assertions do not have the factual heft required to survive a motion to dismiss, but rather are conclusions and speculation that are entitled to no weight. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (instructing courts to remove from the

---

to act in any significant way without authorization from" the parent sovereign. *Id.* at 552. In support of this conclusion, the court not only relied on a decision that looked to the sovereign's control over the entities' "day-to-day operations," but further found that the defendant-charity's charitable giving was "driven by directives" from Iran and that "management and operations of the property . . . appears to be overseen and controlled" by Iran. *See id.* at 548, 551-52 (citing *Kalamazoo Spice Extraction Co. v. Provisional Military Gov't of Socialist Ethiopia*, 616 F. Supp. 660, 666 (W.D. Mich. 1985)). *TMR Energy Ltd. v. State Property Fund of Ukraine*, 411 F.3d 296 (D.C. Cir. 2005), in turn, is not only an out-of-Circuit decision concerning personal jurisdiction under the due process clause, but the court there held that "the State of Ukraine had *plenary* control over the [defendant]." *Id.* at 301 (emphasis added).

complaint conclusory allegations); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (factual heft "must be enough to raise a right to relief above the speculative level").

Similarly, plaintiffs offer the "heads I win, tails you lose" assertion that Martin Redrado served as BCRA Governor for over *five* years because "he implemented [the Executive's] wishes dutifully," TAC ¶ 87 (citing only to coordination during the economic crisis in October 2008 in support); Pl. Opp. at 48, but then was removed (following Argentine legal processes) when he "dramatically changed" his purported subservient relationship to the Republic's President, TAC ¶ 88. Plaintiffs again fail to provide factual allegations to support their conclusory assertion that Redrado was controlled by the Republic while serving as BCRA Governor. *See Iqbal*, 556 U.S. at 678-79. And, plaintiffs provide no response to the undisputed fact that BCRA is not governed solely by its Governor, but by a ten-member board with substantial powers. *See* Rep. Br. at 12 n.5 (citing Charter Art. 6, 12, 14-15 (Ex. A)).

Finally, plaintiffs do not dispute that it is both common and appropriate for parent governments to hire and fire their instrumentalities' leadership and to borrow funds from their central banks. *See* Rep. Br. at 11-13, 17-19. They further acknowledge that at least "some 'coordination' of monetary policy is common between central banks and parent governments." Pl. Opp. at 49. Nevertheless, plaintiffs contend that the Republic's use of such powers with regard to BCRA creates an alter ego relationship, *see id.* at 45, but notably do not cite a single case, and the Republic is aware of none, that has disregarded the presumption of separateness on similar allegations. Plaintiffs' inability to cite one analogous decision is all the more telling in light of their failure to address this Court's and the Second Circuit's recent decisions dismissing an alter ego claim against BNA, another bank and state-owned instrumentality of the Republic. *See Seijas v. Republic of Argentina*, No. 10 Civ. 4300, 2011 WL 1137942, *4-10, *12 (S.D.N.Y.

8

Mar. 28, 2011) (specifically identifying allegations that the Republic forced chairmen to resign and appointed political allies, and required that the bank carry out certain governmental policies, in dismissing action), *aff'd*, No. 11-1714-cv, 2012 WL 5259030, at *2 (2d Cir. Oct. 25, 2012) (allegations of, *inter alia*, appointment and removal of directors and loaning of funds in violation of bank's charter "insufficient to establish the *extensive control* necessary to sustain an alter ego claim or even to establish a reasonable basis for assuming jurisdiction").  These decisions, in addition to those cited by the Republic in its opening brief, Rep. Br. at 9-19, establish that plaintiffs have failed to allege sufficient facts to plead an alter ego claim against BCRA.

### B.  Plaintiffs Have Failed To Plead "Fraud Or Injustice"

As set forth by the Republic in its opening brief, *Bancec's* fraud or injustice prong has been interpreted narrowly by federal courts so as to prevent this exception from swallowing the strong presumption of separateness afforded instrumentalities of foreign states.  Rep. Br. at 20.  Plaintiffs respond by citing a footnote in *Bancec* for the proposition that the alter ego exception (not the fraud or injustice prong) should apply "in a wide variety of circumstances," Pl. Opp. at 50-51, but this argument does not help them, as they are still unable to plead a "fraud or injustice" that justifies piercing BCRA's corporate veil.

As an initial matter, plaintiffs' contention that recognizing BCRA's separateness works a "fraud or injustice" because plaintiffs have outstanding judgments against the Republic, TAC ¶ 115, is insufficient as a matter of law to justify holding BCRA accountable for the Republic's debts.  *See Alejandre v. Telefonica Larga Distancia de Puerto Rico, Inc.*, 183 F.3d 1277, 1286-87 (11th Cir. 1999); Rep. Br. at 21.  Plaintiffs seek to avoid this dispositive law by contending that BCRA should be held liable for their judgments because the *Republic* has used funds that it borrowed from BCRA to pay other creditors, thereby rendering BCRA's separateness "illusory."

9

Pl. Opp. at 51; TAC ¶ 114; *id* ¶ 118 ("Argentina's domination and control over the Central Bank" causes a "fraud or injustice on Plaintiffs" because BCRA pays creditors at the Republic's "discretion and direction"). In other words, plaintiffs are trying to satisfy the "fraud or injustice" prong of *Bancec* simply by repackaging their assertion of "domination and control" under *Bancec's* first prong. *See* Rep. Br. at 22.

Moreover, the Republic's payment of funds lawfully owed to other creditors does not, and cannot, amount to a fraud or injustice on plaintiffs. *Cf. HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2d Cir. 1995) ("[E]ven the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance."). Even assuming, *arguendo*, that it could, the recognition of BCRA's separateness does not cause this harm. As the Second Circuit held in *NML*, "the plain language, history, and structure of § 1611(b)(1) immunizes property of a foreign central bank or monetary authority held for its own account without regard to whether the bank or authority is independent from its parent state pursuant to *Bancec*." 652 F.3d at 187-88. Thus, declaring BCRA to be an alter ego of the Republic would not allow plaintiffs to enforce their judgments on BCRA's assets, and therefore would not remedy the purported "fraud or injustice" they have suffered.[5]

### C. Plaintiffs Are Not Entitled To Discovery

Despite having pursued a declaratory judgment action against BCRA through four complaints over more than six years, plaintiffs have failed to state an alter ego claim as a matter

---

[5] Plaintiffs demonstrate the weakness of their position by arguing that BCRA was involved in "the Republic's issuance of, and eventual suspension of payments on, plaintiffs' bonds" because BCRA transferred reserves to outside the United States. Pl. Opp. at 53. BCRA did not cause the Republic's issuance of debt or default. And of course, the movement by BCRA of central bank reserves does not, either as a matter of fact or logic, allow the Republic to "perpetrate injustice," *id.*, since these reserves are immune from execution here and thus not available to plaintiffs in any event. *See supra*; *see also* Rep. Br. at 21-22.

of law.  They now try to avoid this deficiency by requesting unspecified jurisdictional discovery "regarding the nature of the relationship between BCRA and the Republic."  Pl. Opp. at 54.  However, such discovery must be ordered "circumspectly and only to verify allegations of *specific facts* crucial to an immunity determination."  *First City, Tex.-Hous., N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998) (emphasis added) (internal quotation marks omitted).  Plaintiffs have not only failed to identify the specific facts on which discovery would shed light, but have failed to establish even a *prima facie* case of alter ego, *see In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 96 (2d Cir. 2008), let alone a "reasonable basis for assuming jurisdiction," *Seijas*, 2012 WL 5259030, at *2.  Plaintiffs' request for discovery must therefore be denied.

## CONCLUSION

For the foregoing reasons, plaintiffs' request for discovery should be denied, the Republic's and BCRA's motions to dismiss should be granted, and the Complaint should be dismissed with prejudice.

Dated: New York, New York
       March 18, 2013

>                          Respectfully submitted,
>                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
>                          By:____/s/ Carmine D. Boccuzzi_____
>                              Jonathan I. Blackman (jblackman@cgsh.com)
>                              Carmine D. Boccuzzi (cboccuzzi@cgsh.com)
>
>                          One Liberty Plaza
>                          New York, New York 10006
>                          (212) 225-2000
>
>                          Attorneys for the Republic of Argentina

11